# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **TINA BREWER AND** | **CIVIL ACTION NO. 11-0185** |
| **CHARLES BREWER** | |
| | |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| | |
| **ROYCE TONEY, CONNIE MILLER,** | **MAG. JUDGE KAREN L. HAYES** |
| **JOSHUA FOSTER, AND KYLE WALKER** | |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 9] filed by Defendants Royce Toney, Sheriff of Ouachita Parish; Sergeant Connie Miller; Deputy Joshua Foster; and Deputy Kyle Walker (collectively "Defendants"). Plaintiffs Tina Brewer and Charles Brewer filed a memorandum in opposition. [Doc. No. 13], and Defendants filed a reply. [Doc. No. 14]. For the following reasons, Defendants' Motion for Summary Judgment is GRANTED.

## I.    FACTUAL AND PROCEDURAL HISTORY

On February 1, 2010, Defendants Miller, Foster, and Walker ("the deputy Defendants") responded to a domestic disturbance complaint at Plaintiff Tina Brewer's ("Mrs. Brewer") mobile home. The third-party complainant stated that Mrs. Brewer was involved in a dispute and "has weapons in residence and makes threats often but not today." [Doc. No. 13-2, p. 2]. After arriving, the deputy Defendants spoke with Mrs. Brewer's father, James Dyer ("Dyer"), who advised them that Mrs. Brewer and her husband, Plaintiff Charles Brewer ("Mr. Brewer"), had been fighting. Dyer did not advise the deputy Defendants that he believed Mrs. Brewer intended to hurt herself.

The deputy Defendants approached Mrs. Brewer on the front porch of her mobile home.

Foster observed dried blood on the fingers and knuckles of Mrs. Brewer's right hand and that the pinky finger on her left hand appeared to be broken.  Mrs. Brewer told the deputy Defendants that she and Mr. Brewer had been driving down Louisiana Highway 139 when they began to argue over Mrs. Brewer's belief that Mr. Brewer had taken their income tax refund and spent it on drugs.  The argument escalated into a physical altercation, and Mrs. Brewer claimed that Mr. Brewer had grabbed her hands, breaking her left pinky finger; punched her in the back of the head; and slapped her face.  The fight then ended, and the couple drove home.  Mrs. Brewer stayed in the vehicle for approximately two hours, waiting for Mr. Brewer to take her to the hospital.  She stated that Mr. Brewer walked down the road near their home at some point earlier, and she had not seen him return.

After talking with Mrs. Brewer, the deputy Defendants learned that there was an outstanding felony warrant for Mrs. Brewer's arrest on drug-related charges.  Around this time,Walker left the scene to another call.

Miller, Foster, and Mrs. Brewer entered her residence, and the deputies advised Mrs. Brewer that she was being placed under arrest.  Miller and Foster permitted Mrs. Brewer to enter her bedroom, so that she could put on shoes.  Both Miller and Foster went into the bedroom with her. Foster observed that the bedroom was in complete disarray with clothes everywhere.  Miller noted that clothes were piled at the foot of the bed almost as high as the bed itself and that they were also piled on the bed.  Additionally, there were objects or articles piled on a dresser to the left side of the bed and on the floor between the dresser and a night stand.  Neither Miller nor Foster observed any firearms in Mrs. Brewer's home.

After Mrs. Brewer put on her shoes, Foster walked her to the patrol unit, where she was secured in the back seat.  He told her that they would take her to LSU Health Sciences Center/EA

2

Conway Medical Center for treatment prior to transporting her to Ouachita Correctional Center ("OCC").  Foster did not handcuff Mrs. Brewer because of the injuries to her hands.  Miller was attempting to document Mrs. Brewer's injuries by taking photographs of her hands when Mrs. Brewer said that she was going to be sick and needed to use the bathroom.

Miller escorted Mrs. Brewer to the bathroom in her mobile home, which was connected to the bedroom that Miller and Foster had previously observed.  Miller asked Mrs. Brewer if she had any medications that she needed to take with her, and Mrs. Brewer replied that she wore contact lenses and needed them to see.  Mrs. Brewer found her contact lens solution, but stated that she needed some other eye drops for an eye infection.  Miller saw a small, white bottle that looked like a dropper bottle, on a stand located against a wall, which was a few feet from the bedroom in the entrance to the kitchen area.  Because Mrs. Brewer had repeatedly requested the eye drops, Miller stepped out of the bedroom and walked towards the stand to look at the bottle.  Miller was outside the bedroom for five to ten seconds when she heard a noise in the bedroom.  Miller immediately returned, and Mrs. Brewer said she had shot herself.  Miller saw a dark stain in the abdomen area of Mrs. Brewer's shirt.  She lifted the shirt and saw a bullet hole in Mrs. Brewer's abdomen.  Foster returned to the bedroom, and he and Miller looked for the weapon, but could not find it because the bedroom was in such disarray.

Emergency medical assistance was contacted and arrived on the scene.  After their arrival, the weapon was located.

Prior to shooting herself, Mrs. Brewer did not advise or indicate to any of the deputy Defendants that she wished to or intended to harm herself.

On January 28, 2012, Mr. and Mrs. Brewer filed suit against Defendants alleging federal

claims under 42 U.S.C. §§ 1983 and 1988 and a state law claim of negligence.

On February 3, 2012, Defendants filed a Motion for Summary Judgment. [Doc. No. 9]. On March 12, 2012, Plaintiffs filed a memorandum in opposition. [Doc. No. 13]. On March 22, 2012, Defendants filed a reply. [Doc. No. 14].

## II.     LAW AND ANALYSIS

### A.     Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

**B.      Civil Rights Claims**

In their Complaint, Plaintiffs asserted claims against Defendants in their individual and

official capacities under 42 U.S.C. § 1983 for allegedly violating Mrs. Brewer's rights under the

Fourteenth Amendment[1] of the United States Constitution to "be secure in [her] person, the right to

due process of law, and the freedom against the risk of suicide and/or self-injury."  [Doc. No. 1, ¶

19].  Plaintiffs also assert claims for attorney's fees and costs under 42 U.S.C. § 1988.

### 1.      Claims Against Individual Deputy Defendants

Defendants argue that the Court should grant summary judgment as to the § 1983 claims

against the deputy Defendants in their individual capacity because they are entitled to qualified

immunity.  In support, Defendants state that they have not violated a clearly established right and had

no notice that Mrs. Brewer was suicidal.  Plaintiffs argue that the Court should not grant summary

judgment because the deputy Defendants had knowledge that there were weapons in the residence,

knew that there were disturbances in the residence earlier in the day, and knew that Mrs. Brewer

previously made physical threats.  Plaintiffs state that in light of this knowledge, Defendants' actions

demonstrate deliberate indifference to Mrs. Brewer's constitutional rights.

To overcome a qualified immunity defense, Plaintiffs must (1) allege that the Defendants

have violated a "clearly established constitutional right"; and, (2) if so, must demonstrate that the

Defendants' "conduct was objectively unreasonable in the light of the clearly established law at the

time of the incident." *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (citations omitted).

---

[1]The Fourteenth Amendment states, in pertinent part: "nor shall any State deprive any person of
life, liberty, or property, without due process of law . . . ."  U.S. Const. Amend. XIV.

With regard to the first prong, Plaintiffs have alleged a violation of a clearly established right. "Ordinarily, a state official has no constitutional duty to protect an individual from private violence." *McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002) (citation omitted). Nonetheless, the State owes a duty under the Fourteenth Amendment to provide pretrial detainees with "basic human needs, including medical care and protection from harm, during their confinement." *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000) (citation and internal quotation marks omitted). This duty extends to protecting detainees from self-inflicted harm. *See Brumfield v. Hollins*, 551 F.3d 322, 327 (5th Cir. 2008) (applying a prisoner's Eighth Amendment[2] right to be protected from harm to a prisoner's self-inflicted injury). A pretrial detainee's right to be protected against self-inflicted harm is violated when a police officer or prison official had "subjective knowledge of a substantial risk of serious harm to [the] pretrial detainee but responded with deliberate indifference to that risk." *Id.*[3] The Fifth Circuit has ruled that this right has been clearly established since at least 1996. *Jacobs*, 228 F.3d at 393 (citation omitted).

Here, Plaintiffs have alleged that the deputy Defendants "were aware of a substantial and overwhelming risk of serious injury to [Mrs. Brewer]." [Doc. No. 1, p. 4]. In support, Plaintiffs allege that the deputy Defendants knew there were firearms in the home, knew Mrs. Brewer had

---

[2]Although pretrial detainees and prisoners enjoy essentially the same protections against injury, their rights spring from different constitutional provisions. *Hare*, 74 F.3d 633, 639 (5th Cir. 1996). Prisoners' rights flow from the Eighth Amendment, and pretrial detainnees' rights primarily flow from the Fourteenth Amendment. *Id*.

[3] The Fifth Circuit applies this particular standard to cases based on an officer's "episodic acts or omissions," which are distinct from "condition of confinement" cases. See *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc) ("In an 'episodic act or omission' case, an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act or, omission by, the actor and then derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission.").

made some form of threats in the past, and left her alone in the bedroom. Plaintiffs argue that this knowledge and the deputies' actions constitute deliberate indifference to Mrs. Brewer's medical needs. Therefore, Plaintiffs have alleged the violation of a clearly established constitutional right.

The second prong of the qualified immunity analysis considers two separate inquiries: "Whether the allegedly violated constitutional rights were *clearly established at the time of the incident*; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law."[4] *Hare*, 135 F.3d at 326 (citations omitted). Here, the Fifth Circuit has ruled, "It is well settled . . . that 'a state official's episodic act or omission violates a pretrial detainee's due process rights to medical care [and protection from harm] if the official acts with subjective deliberate indifference to the detainee's rights.'" *Jacobs*, 228 F.3d at 393 (quoting *Nerren v. Livingston Police Dep't,* 86 F.3d 469, 473 (5th Cir. 1996)). Therefore, the Court must consider whether the conduct of the deputy Defendants was objectively reasonable.

As the Fifth Circuit has explained, the objective reasonableness of defendants' actions must be evaluated in light of the subjective deliberate indifference standard:

> Accordingly, for this appeal on qualified immunity, the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident . . . . And, under that standard–the minimum standard not to be deliberately indifferent–the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable.[5]

---

[4]"When evaluating whether a plaintiff stated a constitutional violation, we looked to currently applicable constitutional standards. However, 'the objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question.'" *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993) (citations omitted).

[5]Several courts have noted the confusing interaction between the subjective deliberate indifference standard and the objective reasonableness standard. *See, e.g., Scott v. Abate*, 1995 U.S. Dist. LEXIS 21430,CV-93-4589, at *10 n.5 (E.D.N.Y. Sept. 29, 1995) ("It is … difficult to imagine factual circumstances in which a trier of fact could find deliberate indifference as defined by [*Farmer v. Brennan*, 511 U.S. 825 (1994)] and nevertheless conclude that a reasonable person in [the] defendant's

*Hare*, 135 F.3d 328.

The Court finds that in light of the deliberate indifference standard, the deputy Defendants' actions were not objectively unreasonable.  Mrs. Brewer never indicated to the deputy Defendants that she intended to harm herself.  Although she made some form of threats in the past, the deputy Defendants had no reason to believe that she wished to inflict serious bodily harm on herself at the time of the arrest.  Further, after observing her for a period of time, the deputy Defendants chose not to cuff Mrs. Brewer out of concern for the broken finger and other hand injuries she suffered.  Finally, the deputy Defendants left her unattended for mere seconds, and such inattention only occurred because a deputy was retrieving Mrs. Brewer's eye drops.  Although the deputy Defendants may have misjudged Mrs. Brewer's intentions, their actions demonstrate a concern for Mrs. Brewer's well being, not a deliberate indifference to her need for protection from self harm.  Therefore, the deputy Defendants' actions were not objectively unreasonable, and  Defendants' Motion for Summary Judgment with regard to the individual claims against the deputy Defendants is GRANTED.

### 2.    Claims against Sheriff Royce Toney

Plaintiffs assert the following claims under § 1983 against Sheriff Royce Toney: "A. failing to properly discipline, restrict and control the Deputies; B. Failing to take adequate precautions in the hiring, promotion and retention of police personnel, including the Deputies; and, C. Failing to properly train in the execution of Orders of protection." [Doc. No. 1, p. 7].  Plaintiffs do not specify whether they are asserting the claims against Toney in his individual or official capacity.  Therefore,

---

position was not chargeable with knowledge that his or her actions violated the plaintiff's clearly established constitutional rights.") (cited in *Hare*, 135 F.3d at 328).

the Court will consider the claims under both.

Defendants argue that the Court should grant summary judgment with regard to the claims against Toney because Plaintiffs have not offered sufficient evidence to establish deliberate indifference and overcome Toney's qualified immunity, Plaintiffs have not specified a particular policy that violated their rights, and Plaintiffs have failed to offer any detailed allegations or factual evidence of wrongdoing by Toney or the municipality.  Plaintiffs do not respond to these arguments in their Opposition to Motion for Summary Judgment.

With regard to the claims for failure to discipline, restrict, control, and train against Toney, Plaintiffs must demonstrate that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of [Plaintiff's] rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998) (citations omitted).  Failing to control a subordinate's "known propensity for violating the law" is a method of demonstrating deliberate indifference.  *Thompson v. Connick*, 553 F.3d 836, 855 (5th Cir. 2008) (vacated on other grounds) (citing *Sims v. Adams*, 537 F.2d 829, 831-32 (5th Cir. 1976)).  These requirements are identical for claims against Toney in his individual and official capacities.  *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc).

Similarly, with regard to Plaintiffs' claim against Toney in his individual and official capacities for failing to take adequate precautions in the hiring, promotion and retention of police personnel, Plaintiffs must demonstrate (1) the hiring procedures were inadequate; (2) that Toney was deliberately indifferent in adopting the hiring policy; and (3) the inadequate hiring policy directly caused the violation of Mrs. Brewer's constitutional rights.  *Doe v. Hillsboro Indep. Sch. Dist.*, 81

9

F.3d 1395, 1403 (5th Cir. 1996).  As the Fifth Circuit has noted, "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citations omitted).  In the context of the hiring of police officers, the Fifth Circuit has indicated that a plaintiff must "establish actual knowledge of the seriously deficient character of an applicant or a persistent, widespread pattern of the hiring of policemen, for instance, with a background of unjustified violence." *Stokes v. Bullins*, 844 F.2d 269, 275 (5th Cir. 1988).

Here, Plaintiffs have offered no facts to support these claims.  They merely allege that because Mrs. Brewer shot herself, Toney must have been deliberately indifferent to Plaintiffs' civil rights in his hiring, training, and supervision of the deputies.  Plaintiffs did not oppose Defendants' Motion for Summary Judgment on these claims.  Given the evidence presented by Defendants, Plaintiffs could not stand on the conclusory allegations in their verified Complaint, but were required to support their claims with specific facts demonstrating a constitutional deprivation.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).  Plaintiffs failed to meet their burden.  Therefore, Defendants' Motion for Summary Judgment is GRANTED with regard to Plaintiffs' § 1983 claims against Toney in his individual and official capacities.

### C.      Negligence

In their Complaint, Plaintiffs also allege state law claims of negligence against the deputy Defendants.  Defendants argue that the Court should grant summary judgment on the negligence claims in their favor because Mrs. Brewer's intention to harm herself was not foreseeable.  Plaintiffs argue that Mrs. Brewer's self-inflicted injury was foreseeable to the deputy Defendants because they

10

knew there were firearms in the residence and Mrs. Brewer had recently been in a violent

confrontation with her husband.

> In Louisiana, to recover on a negligence claim, a plaintiff must demonstrate that
>
> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).

*Mathieu v. Imperial Toy Corp.*, 94-C-0952 (La. 11/30/94); 646 So.2d 318, 322 (citations omitted).

The Louisiana Supreme Court has held, "Generally, a police officer has a duty to perform

his function with due regard for the safety of all citizens who will be affected by his action.  His

authority must at all times be exercised in a reasonable fashion and he must act as a reasonably

prudent man under the circumstances."  *Hardy v. Bowie*, 98-CC-2821 (La. 9/8/99); 744 So.2d 606,

614 (quotations and citations omitted).

Although the deputy Defendants owed Mrs. Brewer a duty of reasonable care during her

arrest, their conduct in this case did not breach that duty.  Even if the officers were aware that Mrs.

Brewer made threats in the past, the nature of those threats is unclear, and Mrs. Brewer did not give

the officers any indication during the arrest that she intended to harm herself.  The deputy

Defendants increased the risk of harm by choosing not to handcuff Mrs. Brewer, but they did so out

of a concern for her recent injury.  Furthermore, the attending deputy left Mrs. Brewer alone for only

a few moments because the deputy was trying to retrieve Mrs. Brewer's eye drops.  In light of these

undisputed facts, the Court finds that Plaintiffs have failed to demonstrate the presence of a material

issue of fact that the deputy Defendants breached their duty of reasonable care toward Mrs. Brewer.

Therefore, Defendants' Motion for Summary Judgment with regard to the negligence claims is

GRANTED.

## III.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 9] is

GRANTED, and Plaintiffs' claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 27th day of April, 2012.



_____

ROBERT G. JAMES

UNITED STATES DISTRICT JUDGE